**Brandon CLEVELAND and Isiah Jackson, Plaintiffs–Appellants,**

v.

**CAPLAW ENTERPRISES; Defendant–Appellee.**

**Docket No. 05–4643–CV.**

United States Court of Appeals, Second Circuit.

Argued: March 15, 2006.

Decided: May 15, 2006.

Laurie M. Lambrix, Monroe County Legal Assistance Center, Rochester, N.Y., for Plaintiff–Appellant Brandon Cleveland.

Mary Beth Feindt, Rochester, N.Y., for Plaintiff–Appellant Isiah Jackson.

David Rothenberg, Geiger and Rothenberg, LLP, Rochester, N.Y., for Defendant–Appellee Caplaw Enterprises.

Before: McLAUGHLIN and JACOBS,

Circuit Judges.*

McLAUGHLIN, Circuit Judge.

Brandon Cleveland and Isiah Jackson, both African–Americans, sued Caplaw Enterprises in the United States District Court for the Western District of New York (Siragusa, *J.*). While they did not charge Caplaw with discrimination, they sought to hold it vicariously liable for the allegedly discriminatory renting of an apartment by Caplaw's brokers. The district court dismissed the complaint on the pleadings prior to discovery. Because we find that plaintiffs have adequately pled facts that could support a finding of vicarious liability against Caplaw, we vacate and remand for further proceedings consistent with this opinion.

## BACKGROUND

In February 2003, Cleveland and Jackson tried to rent an apartment together in Rochester, New York. They eventually decided upon an apartment shown to them by Heather Stauber, an employee of LC Properties of Rochester, LLC ("LC Properties"). LC Properties managed the apartment building and was the property's exclusive leasing agent pursuant to a Property Management Agreement (the "Agreement") with its owner, Caplaw.

Plaintiffs executed a one-year lease, and each put down $100 towards the $650 security deposit. The lease permitted them to take possession of the premises the next month. Shortly before their move-in date, plaintiffs contacted LC Properties to obtain the keys to the apartment. Stauber was away on vacation, so plaintiffs dealt with another LC Properties representative, Lou Thyroff.

Thyroff told plaintiffs that they would need to put down a larger deposit before moving in. Thyroff also expressed reservations that plaintiffs were not "the right fit" for the apartment building, because the "professional" living downstairs would not like having unruly college-age tenants living above him.

Suspecting discrimination, plaintiffs called a local housing agency. After the agency contacted LC Properties on their behalf, plaintiffs were shocked to learn that the apartment had already been rented to another tenant. When plaintiffs went to recoup their security deposit, Stauber told them that the "professional" tenant at the property had called LC Properties to ask why the apartment was being shown to "two black hoodlums," and had volunteered that he would not be happy if the apartment was rented to African–Americans. Stauber said that this was probably the reason why plaintiffs had not been allowed to move in.

In July 2003, plaintiffs filed suit under the Fair Housing Act ("FHA") in the United States District Court for the Western District of New York. They named as defendants LC Properties, two LC Properties representatives, and Charles Bisuito, a general partner of Caplaw (sued as "Charles Bisuito d/b/a Caplaw Enterprises"). After discovery, the district court dismissed Bisuito from the suit, holding that Caplaw itself was the owner of record, and that the "doing business as" designation was insufficient to name Caplaw as a defendant.

Rather than amending their complaint to add Caplaw as a defendant, plaintiffs commenced the present action under the FHA against Caplaw in the same court before the same judge in January 2005.

* The Honorable Richard C. Wesley recused himself prior to oral argument and did not participate in this appeal. Because the remaining members of the Panel are in agreement, we decide this case in accordance with § 0.14(b) of the rules of this Court.

Plaintiffs contended that under traditional agency principles Caplaw should be held vicariously liable for the allegedly discriminatory acts of LC Properties.

In June 2005, the district court granted Caplaw's motion for judgment on the pleadings before discovery and dismissed plaintiffs' complaint. The court found that plaintiffs had not pled sufficient facts to support: (1) a finding of agency necessary to support a claim for vicarious liability; *and* (2) the owner's knowledge of a prospective renter's racial identity which in the court's belief was required by our decision in *Mitchell v. Shane,* 350 F.3d 39 (2d Cir.2003).

Plaintiffs now appeal.

## DISCUSSION

Plaintiffs contend that the district court erred in dismissing their complaint on the pleadings. We agree.

■ As a threshold matter, Caplaw suggests that the district court actually converted its motion for judgment on the pleadings into a motion for summary judgment. *See* Fed.R.Civ.P. 12(c); Fed. R.Civ.P. 56. Accordingly, it contends that plaintiffs could not be content to rest upon their complaint, but were required to offer evidence "beyond the paper allegations of the pleadings." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000). This argument is without merit.

A court may indeed convert a motion for judgment on the pleadings into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed.R.Civ.P. 12(c). Although each side submitted excerpts from depositions taken in the earlier case against LC Properties, the district court categorically stated that "the Court finds it unnecessary to convert this motion." In its decision, the district court

relied only upon the pleadings and the Agreement, which was incorporated into the pleadings by reference. *See, e.g., Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005) (documents incorporated by reference may be considered on a motion to dismiss without triggering conversion). While we understand that "matters outside the pleadings [were] presented to ... the court," they were "excluded" (within the meaning of Rule 12(c)) by the district court's explicit refusal to consider the outside materials.

Accordingly, the district court's decision is properly addressed solely as a grant of a motion for judgment on the pleadings under Rule 12(c).

### A. *Standard of Review*

This Court reviews de novo a district court's decision to grant judgment on the pleadings. *Karedes v. Ackerley Group, Inc.,* 423 F.3d 107, 113 (2d Cir.2005).

The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Id.* In each case, the court must "accept[ ] as true the complaint's factual allegations and draw[ ] all inferences in the plaintiff's favor." *Id.* A complaint should not be dismissed on the pleadings unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "This standard is applied with particular strictness when the plaintiff complains of a civil rights violation." *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998) (citing *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)).

## B. *Agency*

■ It is noteworthy that plaintiffs do not claim that Caplaw itself discriminated against them. Instead, they seek to hold Caplaw vicariously liable for the allegedly discriminatory acts of its property manager, LC Properties. *See, e.g., Meyer v. Holley*, 537 U.S. 280, 285–89, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) (applying traditional rules of vicarious liability to housing discrimination cases). Here, whether Caplaw can be haled into court to answer for the alleged malfeasance of LC Properties depends exclusively on whether LC Properties was serving as Caplaw's agent.

■ "In order to avoid predicating liability for Title VIII [of the Civil Rights Act of 1968] violations on the vagaries of state law, the question whether an agency relationship exists for purposes of the Fair Housing Act is determined under federal law." *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 n. 13 (2d Cir.1994).

■ Agency is a legal concept that depends on the existence of three elements: (1) "the manifestation by the principal that the agent shall act for him"; (2) "the agent's acceptance of the undertaking"; *and* (3) "the understanding of the parties that the principal is to be in control of the undertaking." *Id.* at 385; *see also* Restatement (Second) of Agency § 1 cmt. b (1958). The question whether an agency relationship exists is highly factual, however, and can turn on a number of factors, including:

> the situation of the parties, their relations to one another, and the business in which they are engaged; the general usages of the business in question and the purported principal's business methods; the nature of the subject matters and the circumstances under which the business is done.

*Columbia Broad. Sys., Inc. v. Stokely–Van Camp, Inc.*, 522 F.2d 369, 375–76 (2d Cir. 1975).

■ The parties agree that the first two elements of agency are satisfied by the Agreement. Thus, only control is at issue. It is clear that "the right of control by the principal may be exercised by prescribing what the agent shall or shall not do before the agent acts, or at the time when he acts, or at both times." Restatement (Second) of Agency § 14 cmt. a. Nevertheless, the control asserted need not "include control at every moment; its exercise may be very attenuated and, as where the principal is physically absent, may be ineffective." *Id.*

Here, the district court erred by concluding that plaintiffs had not raised allegations which, if proven, would establish that Caplaw exercised control over LC Properties. The complaint alleges that LC Properties "acted as agents for Caplaw Enterprises ... at all times relevant to this lawsuit, pursuant to a Property Management Agreement." The Agreement, which was incorporated into the complaint by reference, notes that LC Properties would "perform all reasonable services requested by [Caplaw] in regards to operating, maintaining, servicing and leasing the property." Accepting these facts as true-which we must on review of a judgment on the pleadings-it is not at all clear that it "appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle him to relief." *Irish Lesbian & Gay Org.*, 143 F.3d at 644.

In arriving at the opposite conclusion, the district court focused unduly on the Agreement's provision that LC Properties would be the "sole tenant contact." We understand the district court's concern that this could mean that Caplaw explicitly decided not to exercise any control available to it under the Agreement. We

share, however, the reluctance of our sister Circuits to rely upon conclusory contractual language to dismiss a fair housing claim for lack of agency. *See, e.g., City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.,* 982 F.2d 1086, 1097–98 (7th Cir.1992) (contractual language establishing an "independent contractor" relationship insufficient to preclude finding of agency); *Northside Realty Assocs., Inc. v. United States,* 605 F.2d 1348, 1353–54 (5th Cir.1979) (same). Slavish deference to contractual language is inappropriate in the highly-factual and often nuanced agency analysis. Moreover, the cited clause does not preclude Caplaw from directing the *manner* by which LC Properties deals with tenants. Additionally, the clause does not even bear upon LC Properties's role as rental agent (*i.e.,* how LC Properties was to handle those individuals who were not yet tenants), the role at issue here.

Because Cleveland and Jackson have pled facts that could reasonably support a finding of control of LC Properties by Caplaw, it was error to dismiss the complaint at the pleadings stage for failure to allege agency.

### C. *Mitchell v. Shane*

The district court also believed that judgment on the pleadings was compelled by our decision in *Mitchell v. Shane,* 350 F.3d 39 (2d Cir.2003). We disagree.

In *Mitchell,* an African–American couple brought FHA claims against the owners of a home. Joined as defendants were the realty firm seeking to sell the property and an individual employee of the realty firm. We concluded that summary judg-

ment in favor of the realty firm and its employee was inappropriate because: (1) there was a genuine issue as to whether the employee treated the plaintiffs differently from prospective white purchasers; *and* (2) the employer realty firm could be vicariously liable for its employee's alleged transgressions under *Meyer v. Holley,* 537 U.S. 280, 282, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003). *Mitchell,* 350 F.3d at 49–50.

We also determined, however, that summary judgment for the property owners *was* appropriate because the plaintiffs had failed to adduce evidence demonstrating that the owners "were motivated by discrimination ... [and had] knowledge of the prospective buyers' racial identity"-an essential component of a plaintiff's prima facie case under the FHA. *Id.* at 48–49; *see also Soules v. U.S. Dep't of Hous. & Urban Dev.,* 967 F.2d 817, 822 (2d Cir. 1992) (plaintiff must show that a stated nondiscriminatory reason for denial of housing was pretext for discrimination). Caplaw argues that plaintiffs' similar failure to claim that Caplaw knew that they were African–American should preclude liability here.[1]

■ Caplaw failed to recognize that *Mitchell* addressed only the *direct* liability, rather than the *vicarious* liability, of the property owners. *See Mitchell,* 350 F.3d at 49 (citing *Soules,* 967 F.2d at 822; *Hamilton v. Svatik,* 779 F.2d 383, 387 (7th Cir.1985)). While knowledge of a plaintiff's racial identity is a component of direct liability under the FHA, it is not required to establish vicarious liability

---

1. Caplaw also suggests that *Mitchell* can be read to approve vicarious liability against employers for the actions of their employees, but not against principals for the actions of their agents. Such a curious conclusion directly contravenes the Supreme Court's decision in *Meyer,* 537 U.S. at 285, 123 S.Ct. 824 (tradi-

tional rules of agency "ordinarily make principals or employers vicariously liable for acts of their agents or employees"), and the pre-*Meyer* decisions of this Court. *See, e.g., Cabrera,* 24 F.3d at 393 (landlords liable for hiring "real estate brokers who are engaged in racial steering").

based on another's wrongs. *Meyer*, 537 U.S. at 282, 123 S.Ct. 824.

The record was fully developed through discovery by the time of summary judgment in *Mitchell*. It was clear that the plaintiffs would have been sorely pressed to argue that the absentee property owners exercised control over their realtors. *Mitchell*, 350 F.3d at 42–46 (out-of-state sellers had little input in sale negotiations beyond accepting or rejecting bid). In the present case, however, it remains unclear whether Caplaw exercised control over LC Properties's dealings with prospective renters. And that is precisely the point. Plaintiffs have pled sufficient facts to raise a claim for vicarious liability against Caplaw.

## CONCLUSION

Because plaintiffs have pled facts sufficient to support a finding of vicarious liability against Caplaw, we VACATE the district court's decision and REMAND for further proceedings consistent with this opinion.