Sarah KATZ, on behalf of herself and all others similarly situated, Plaintiff,

v.

IMAGE INNOVATIONS HOLDINGS, INC., Alain Kardos, Derick Sinclair, Michael Radcliffe, James Armenakis, Arthur Gononsky, Clifford Wilkins, Chris Smith, Joseph Radcliffe, Michelle Radcliffe, Denise Constable, Goldstein Golub Kessler LLP, Clyde Bailey, P.C., and H.E. Capital, S.A., Defendants.

No. 06 Civ. 3707(JGK).

United States District Court, S.D. New York.

March 24, 2008.

## MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge.

This is a purported class action for securities fraud brought on behalf of the purchasers of the stock of Image Innovation Holdings, Inc. ("Image") from April 13, 2004 through March 16, 2006. Defendants Michael Radcliffe, Joseph Radcliffe, Michelle Radcliffe, Denise Constable, Arthur Gononsky, and James Armenakis (the "Individual Defendants") are current or for-

mer officers, directors, and employees of Image. Also named as defendants are Image, Alain Kardos, Derick Sinclair, Clifford Wilkins, Chris Smith, Clyde Bailey, P.C., H.E. Capital S.A., and Goldstein Golub Kessler LLP ("GGK").

In the First Amended Complaint, the plaintiffs assert claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder, against all of the defendants. The plaintiffs also assert a claim for control person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the Individual Defendants. The Individual Defendants and GGK have moved to dismiss all claims brought against them in the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b) (6) or for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c).

The substance of the allegations is that Image's financial results reflected revenues that were artificially enhanced through the booking of fictitious sales. The plaintiffs allege that the falsified financial results, which were audited by GGK, Image's independent auditor, were signed by Michael Radcliffe, Armenakis, and Gononsky, and reported in filings with the SEC.

Michael Preston became Chief Executive Officer ("CEO") of Image in April 2005. Based on his own investigation into the 2004 sales and his report to Image's Audit Committee, the Audit Committee hired Marks, Paneth & Shron ("MP & S") to conduct a forensic audit. On March 16, 2006, MP & S reported to the Audit Committee that only a small portion of the alleged $6 million in revenues in 2004 could be verified as bona fide sales by the alleged customers. MP & S found that most of the sales lacked shipping documentation and many purported customers had no knowledge of the sales. MP & S also reported multiple instances in which cash generated from the sale of Image stock to private parties was applied to pay down some of the accounts receivable in satisfaction of the purported 2004 sales. It is further alleged that many of the named defendants attempted to obstruct the investigation into the alleged fraud, and that a $1,120,000 payment that was allegedly misapplied to the receivables passed through the escrow account of Armenakis, who at the time was an Image director and its outside counsel. Image is now in bankruptcy.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007); *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *see also Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007). In deciding the motion, the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002); *see also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993). The standards to be applied to a motion pursuant to Rule 12(c) are the same as those applied to a motion pursuant to 12(b)(6). *See, e.g.,*

*Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006).

## II.

The defendants move to dismiss the plaintiffs' Section 10(b) and Rule 10b–5 claims on the grounds that the plaintiffs have failed to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 109 Stat. 737. In particular, the defendants argue that the Amended Complaint fails to allege scienter adequately.

In order to state a claim brought pursuant to Section 10(b) and Rule 10b–5, a plaintiff must sufficiently allege that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that the plaintiff's reliance on defendant's action caused [plaintiff] injury." *Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir.2000) (citation omitted). Allegations of securities fraud under Section 10(b) and Rule 10b–5 are subject to the heightened pleading requirements of Rule 9(b) and the PSLRA. The Complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir.2007) (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir.2000)).

Under the PSLRA, where allegations of securities fraud are based on material misrepresentations or omissions, the complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). Furthermore, where proof of the defendant's state of mind is required to recover money damages, "[p]laintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,'" namely, the intent "to deceive, manipulate, or defraud, or knowing misconduct." *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 537–38 (2d Cir.1999) (quoting 15 U.S.C. § 78u–4(b)(2)) (citation omitted). "The plaintiff may satisfy this requirement by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Communications*, 493 F.3d at 99 (citing *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 168–69); *see also Acito v. IMCERA Group*, 47 F.3d 47, 52 (2d Cir.1995). The Supreme Court has recently held that the inference of scienter "must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, —— U.S. ——, —— – ——, 127 S.Ct. 2499, 2504–05, 168 L.Ed.2d 179 (2007).

## A.

At the outset, the Supreme Court's recent decision in *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, —— U.S. ——, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008), requires dismissal of the claims against Joseph Radcliffe, Michelle Radcliffe, and Denise Constable. The Amended Complaint does not explain how the alleged actions of these defendants were relied upon by purchasers of Image stock during the relevant period. The Amended Complaint fails to particularize any material misstatements or omissions by these defendants. The Amended Complaint suggests that these defendants "are liable as participants in a fraudulent scheme" to defraud purchasers of Image stock. (Am. Compl.¶ 26.) However, the Court in *Stoneridge* clearly stated that "[t]he conduct of

the secondary actor must satisfy each of the elements or preconditions for liability," including reliance, and that an allegation of " 'scheme liability' . . . does not answer the objection that petitioner did not in fact rely upon [the defendants'] own deceptive conduct." *Stoneridge,* —— U.S. —— at ——, 128 S.Ct. 761 at 770, 169 L.Ed.2d 627. The claims under 10(b) and Rule 10b–5 against Joseph Radcliffe, Michelle Radcliffe, and Denise Constable are therefore **dismissed without prejudice.**

*Stoneridge* does not require dismissal of the claims against Michael Radcliffe, Arthur Gononsky, or James Armenakis because these defendants are alleged to have signed the allegedly fraudulent financial statements. The claims against these defendants allege misstatements that were disseminated to the public as part of Image's SEC filings, and therefore do not rely on theories of "scheme" or "aider and abetter" liability.

### B.

Michael Radcliffe argues that the Amended Complaint fails to plead scienter adequately. The principal argument is that he is not trained in accounting practices and therefore could not be found to have had the requisite state of mind with respect to the allegedly false accounting entries.

This argument is unpersuasive. The facts as alleged by the plaintiffs raise a strong inference of scienter based on conscious disregard or recklessness. Michael Radcliffe is alleged to have been a director of Image, as well as the Chief Operating Officer and then the CEO of Image's principal operating subsidiary, Image Innovations Sports and Entertainment, Inc. ("ISE"), during the relevant period, and signed Image's 10–K for 2004. In the Amended Complaint, the plaintiffs allege that the vast majority of the purported sales in 2004 were fictitious and that the revenue from such sales was recorded despite the fact that the shipments were not made and many of the customers contacted by MP & S had no knowledge of the sales.

It is further alleged that Michael Radcliffe maintained exclusive relationships with ISE's purported customers, supplied the information used to generate invoices for the fictitious sales, and reviewed such invoices before they were faxed to the person responsible for maintaining ISE's general ledger. The plaintiffs also allege that the inventory delivered to ISE's warehouse was vastly insufficient to support the purported sales and that the fictitious receivables were paid down through the misapplication of proceeds from the sale of restricted stock to insiders. Furthermore, the magnitude of the alleged fraud provides some additional circumstantial evidence of scienter. *In re Scottish Re Group Sec. Litig.,* 524 F.Supp.2d 370, 394 & n. 174 (S.D.N.Y.2007). The MP & S report found that only a small fraction of the purported 2004 sales could be verified, most of which were generated by ISE, of which Michael Radcliffe was CEO.

■ The fact that Michael Radcliffe is not trained as an accountant is not sufficient to negate scienter as to the alleged booking of non-existent sales and the subsequent execution of the SEC filings. *Cf. id.* at 394 ("It is simply not a plausible opposing inference that the Company's officers-sophisticated executives actively engaged in the planning of these transactions-were ignorant of the transactions' consequences . . . .") Based on the particularized allegations of fraud in the Amended Complaint, the plaintiffs have raised a strong inference of scienter that is at least as strong as any opposing nonfraudulent inference.

## C.

Gononsky, joined by Armenakis, also argues that the Amended Complaint fails to plead scienter adequately. However, there is a sufficient pleading of scienter based on strong circumstantial evidence of at the least recklessness.

Armenakis allegedly served as a director of Image from March 15, 2004 until his resignation on April 10, 2006, and served as outside counsel to Image and its three wholly-owned subsidiaries during the relevant period. Gononsky allegedly served as a director of Image and a member of its Audit Committee from September 23, 2004 until his resignation on April 9, 2006. Both Armenakis and Gononsky are alleged to have signed Image's 10–K which included the allegedly fraudulent financial statements.

■ The plaintiffs allege that almost all of the sales in 2004 were fictitious and were covered-up by, among other things, the misapplication of proceeds from the issuance of restricted stock to both Gononsky and his son. The allegations suggest that the falsity of the sales would have been uncovered by even a cursory inquiry into the transactions. The inference of intent is further supported by the allegations that he affirmatively attempted to obstruct the investigation and that he participated in the effort, along with Armenakis and the Radcliffes, to remove Preston, who was investigating Image's 2004 financials, as CEO.

■ With respect to Armenakis, the plaintiffs also allege that MP & S found that one of the larger receivables was paid down using a $1,120,000 wire transfer through Armenakis' firm's escrow account, which allegedly originated from one of the other named defendants in this case. MP & S viewed this as a "suspicious" transaction. Armenakis does not offer an explanation for that payment other than offer the conclusory statement that the plaintiffs have failed to allege specifically that the transfer was improper.

The strong inference of scienter raised by the facts as alleged against Gononsky and Armenakis satisfies the standard under *Tellabs*. Contrary to the defendants' argument, the plaintiffs have gone well beyond merely pleading that Gononsky and Armenakis signed a disclosure document which failed to comply with standard accounting practices. Gononsky attempts to argue that the Audit Committee's investigation and subsequent actions negates scienter as a matter of law. However, Gononsky concentrates on the removal of Clyde Bailey as Image's independent auditor, but that is not relevant to the question of whether Gononsky acted with scienter with respect to the 2004 financials which were certified and submitted with the 10–K after Clyde Bailey had been replaced by GGK, which is alleged to have participated in the fraud. Furthermore, the cases cited by Gononsky do not support the proposition that an investigation absolves a defendant where there is evidence that the defendant acted with the requisite intent. *See Higginbotham v. Baxter Int'l*, 495 F.3d 753, 761 (7th Cir.2007) ("Taking the time necessary to get things right is both proper and lawful" but "[m]anagers cannot tell lies.") Furthermore, the allegations that Gononsky attempted to obstruct the investigation into the falsified 2004 financials is sufficient to overcome the argument that Gononsky's earlier investigation of accounting irregularities prevents the plaintiffs from raising a strong inference of scienter.

## D.

GGK moves to dismiss on the grounds that there is an insufficient allegation of scienter under *Tellabs*. GGK argues that the Amended Complaint does not raise a strong inference of scienter on the basis of

conscious misbehavior or recklessness in connection with its unqualified audit opinion for Image's 2004 financial statements that were included with Image's 10–K filed in April 2005.

■ However, there are more than sufficient allegations that GGK either knew or was reckless in not knowing that most of the sales allegedly made by Image in 2004 were fictitious. The initial findings of MP & S indicated that only a small percentage of the 2004 sales could be confirmed as valid. Moreover, when GGK resigned from its engagement as Image's independent auditor in April 2006, it conceded that the MP & S report had, "at a minimum, called into serious question virtually all of [Image's] 2004 revenue." The plaintiffs allege that GGK was in a position at the time of the original audit to validate sales based on shipping documentation, invoices, and other available information, so this is not, as GGK argues, a case of alleging "fraud by hindsight." It is further alleged that GGK did not respond to the Audit Committee's requests that it offer proof that it examined documentation to confirm the purported sales and to produce its audit confirmation letters.

The allegations in the complaint go well beyond simply alleging violations of accounting principles, but instead point to red flags that alerted or should have alerted GGK, absent recklessness, to the fictitious sales. *See In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, 381 F.Supp.2d 192, 240 (S.D.N.Y.2004); *see also Schnall v. Annuity and Life Re (Holdings), Ltd.*, No. 02 Civ. 2133, 2006 WL 2522446, at *4 (D.Conn.2006). Among others, the plaintiffs point to the lack of documentation to substantiate the purported sales, third-party payment of receivables, and the fact that nearly all of Image's 2004 revenue was generated by fifteen customers who did not confirm the sales. These allegations are sufficient to

raise an inference of recklessness. *See, e.g., In re Oxford Health Plans, Inc. Sec. Litig.*, 51 F.Supp.2d 290, 295 (S.D.N.Y. 1999); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 21488087, at *7 (S.D.N.Y. June 23, 2003). Taking the allegations in the Amended Complaint as true, all of the facts alleged raise a strong inference of scienter with respect to GGK that is at least as compelling as any opposing inference of nonfraudulent intent. The Court has considered the surreplies filed by the plaintiffs and GGK, but the surreplies did not affect the outcome. Therefore, the motions to file surreplies (Docket Nos. 72 and 76) are **granted.**

## III.

The Individual Defendants move to dismiss the plaintiffs' Section 20(a) claims against them for control person liability. As an initial matter, the plaintiffs do not respond to the motion to dismiss the Section 20(a) claims against Michelle Radcliffe or Denise Constable, and therefore these claims are deemed abandoned and **dismissed.** *See, e.g., Hanig v. Yorktown Central School District*, 384 F.Supp.2d 710, 723 (S.D.N.Y.2005).

■ Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t. To make out a prima facie case under Section 20(a), "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was,

in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Communications,* 493 F.3d at 108 (citing *S.E.C. v. First Jersey Sec. Inc.,* 101 F.3d 1450, 1472 (2d Cir.1996)).

Because the plaintiffs have stated a claim pursuant to § 10(b) and Rule 10b–5, the "primary violation" element is sufficiently pleaded. *In re WorldCom, Inc. Sec. Lit.,* 294 F.Supp.2d 392, 415 (S.D.N.Y. 2003). For the purposes of Section 20(a), a person has "control" if that person possesses "direct or indirect ... power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b–2; *see also First Jersey,* 101 F.3d at 1472–73. "Whether a person is a 'controlling person' is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss." *CompuDyne Corp. v. Shane,* 453 F.Supp.2d 807, 829 (S.D.N.Y.2006) (citation omitted).

■ With respect to Michael Radcliffe, Joseph Radcliffe, Gononsky, and Armenakis, the plaintiffs have adequately pleaded control. Michael Radcliffe is alleged to have been a director of Image and the CEO of ISE, and signed Image's 10–K in 2003 and 2004. Furthermore, the plaintiffs allege that Joseph Radcliffe had an office at ISE and ran the operation with Michael Radcliffe. Gononsky and Armenakis were both members of Image's board of directors and signed the 10–K for 2004 which contained allegedly fraudulent statements. *See Schnall v. Annuity and Life Re (Holdings), Ltd.,* No. 02 Civ. 2133, 2004 WL 231439, at *9 (D.Conn. Feb. 4, 2004) (citing *In re WorldCom,* 294 F.Supp.2d at 419–20 (S.D.N.Y.2003) ("These approvals through signing sufficiently allege control over those who have been alleged to have violated Section 10(b), at least in connection with the misrepresentations and omissions in those docu-

ments.")). Gononsky was also a member of Image's Audit Committee, which can be considered in connection with control person liability. *See In re Refco, Inc. Sec. Litig.,* 503 F.Supp.2d 611, 639 (S.D.N.Y. 2007) (citation omitted). These allegations are sufficient to satisfy the requirement that the plaintiffs plead control.

There is some disagreement in this Circuit whether a plaintiff must plead the "culpable participation" element of the prima facie case. *See generally In re Parmalat Secur. Litig.,* 375 F.Supp.2d 278, 307–08 nn. 197, 198 (collecting cases). However, the Court need not reach this question because, as discussed above in connection with the Section 10(b) claims, the plaintiffs have alleged sufficient facts demonstrating the culpable participation of the Radcliffes, Gononsky, and Armenakis in the alleged violations.

Therefore, the motion to dismiss the Section 20(a) claims against Michelle Radcliffe and Denise Constable is **granted** and those claims are **dismissed.** The motion to dismiss the Section 20(a) claims against Michael Radcliffe, Joseph Radcliffe, Gononsky, and Armenakis is **denied.**

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed, the arguments are either moot or without merit.

Therefore, for the reasons explained above, the motion to dismiss the claim made under Section 10(b) and Rule 10b–5 against Joseph Radcliffe, Michelle Radcliffe, and Denise Constable is **granted** and those claims are **dismissed without prejudice.** The motion to dismiss the Section 10(b) and Rule 10b–5 claims against Michael Radcliffe, Gononsky, Armenakis and GGK is **denied.**

The motion to dismiss the Section 20(a) claims against Michelle Radcliffe and Denise Constable is **granted** and those claims are **dismissed.** The motion to dismiss the Section 20(a) claims against Michael Radcliffe, Joseph Radcliffe, Gononsky and Armenakis is **denied.**

Any amended claim must be filed within twenty days. The Clerk is directed to close Docket Nos. 45, 46, 50, 72, 76, 88, 95, 100.[1]

**SO ORDERED.**

1. Because Armenakis has appeared in this action, the motion for a default against him (Docket No. 50) is **denied.**