800 F.Supp.2d 405 (2011)
COMMACK SELF-SERVICE KOSHER MEATS, INC, d/b/a Commack Kosher Deli and Market a/k/a Commack Kosher, Brian Yarmeisch, Jeffrey Yarmeisch, and Evelyn Yarmeisch, Plaintiffs,
v.
Patrick HOOKER as Commissioner of the Department of Agriculture and Markets of the State of New York, and Rabbi Luzer Weiss, as Director of the Kosher Law Enforcement Division of Department of Agriculture and Markets of The State of New York, and The State of New York, Defendants.
No. 08 CV 0641(NG)(ETB).
United States District Court, E.D. New York.
August 3, 2011.
*407 Robert J. Dinerstein, Robert J. Dinerstein, P.C., Commack, NY, for Plaintiffs.
Ivan B. Rubin, New York State Attorney General, Robert L. Kraft, State of New York Office of the Attorney General, New York, NY, for Defendants.

OPINION & ORDER
GERSHON, District Judge:
Plaintiffs, Commack Self-Service Kosher Meats, Inc. ("Commack Kosher"), a deli and butcher shop located in Commack, New York, that specializes in kosher foods, and its owners challenge the constitutionality of statutes codified at N.Y. Agriculture & Markets Law ("Ag. & Mkts. Law") §§ 201-a et seq., which regulate the labeling and marketing of food sold as "kosher" in the State of New York. Plaintiffs claim that the statutes described below violate the Free Exercise and Establishment Clauses of the First Amendment and that they are void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment. Defendants seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

Background
In a decision dated July 28, 2000, I held certain sections of §§ 201-a et seq., which were then in effect, to be unconstitutional. *408 Commack Self-Service Kosher Meats, Inc. v. Rubin, 106 F.Supp.2d 445 (2000). The Second Circuit affirmed on May 21, 2002. Commack Self-Service Kosher Meats, Inc. v. Weiss, 294 F.3d 415 (2d Cir.2002), cert. denied, 537 U.S. 1187, 123 S.Ct. 1250, 154 L.Ed.2d 1019 (2003). (The previous suit and corresponding decisions, familiarity with which is assumed, will be referred to here as Commack I). In July of 2004, the New York State Legislature enacted the Kosher Law Protection Act of 2004, codified at §§ 201-a, 201-b, 201-c, and 201-d of the Agriculture and Markets Law (the "Act"). The Act eliminated the previously challenged sections, but retained, in a revised form, those aspects of the statutory scheme that had not been challenged in Commack I.
Plaintiff Commack Kosher is a New York corporation with its principal place of business in the hamlet of Commack, Suffolk County, Long Island. Plaintiffs Brian Yarmeisch, Jeffrey Yarmeisch, and Evelyn Yarmeisch are shareholders, directors, and officers of Commack Kosher. The defendants are the Commissioner of the Department of Agriculture and Markets of the State of New York and the Director of the Kosher Law Enforcement Division of the Department of Agriculture and Markets of the State of New York.

Facts
The following facts alleged in the Amended Complaint and documents incorporated by reference are taken as true for the purposes of this motion,
At all times relevant to the Amended Complaint, Commack Kosher has been a purveyor of kosher food including butchered meats, prepared foods, and kosher provisions. Amended Complaint at ¶ 11. It operates under the kosher supervision of Rabbi William Berman, identified by the plaintiffs as having "held the pulpit of a Conservative Jewish Synagogue." Amended Complaint at ¶¶ 27-29. Although the Amended Complaint does not specify a date, at some time following the enactment of the Act, Commack Kosher was inspected by the Kosher Law Enforcement Division. Amended Complaint at ¶ 140. At that inspection, the inspector "advised the plaintiffs that it was his function to inspect the purveyor's establishment to verify that all products being sold bore acceptable `labels' and that the food being offered for sale was otherwise acceptably kosher." Id. The inspectors that work for the Kosher Law Enforcement Division are not required to be rabbis nor to be learned in Jewish religious law. Amended Complaint at ¶¶ 82-90. Plaintiffs contend that "by dispatching an inspector to inspect the plaintiffs' compliance with the [Act]," the State has "renewed the accusation that the plaintiffs may not be reliable in matters of kashrut." Amended Complaint at ¶ 148.8. The plaintiffs do not allege that any violations were issued as a result of the inspection.

Discussion
On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all wellpleaded factual allegations and draws all inferences in the plaintiffs' favor. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir.2006). A complaint should be dismissed only if it fails to set forth sufficient allegations of fact to state a claim for relief that is "plausible on its face." Ashcroft v. Iqbai, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, the court is "not bound to accept as true legal conclusions couched as factual allegations." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 476-77 (2d Cir.2009).

*409 I. Kosher Law Protection Act of 2004
The Act is essentially a labeling and disclosure law, the heart of which is the requirement that those who represent food to be kosher provide the public with information regarding the person who has certified it to be kosher (the "kosher certifier"). The Act requires that manufacturers and packers of food represented to be kosher, and also retail vendors who package food for sale as kosher, label the food as kosher. The Act requires that manufacturers, packers, distributors, producers, and retail vendors who represent food to be kosher file a statement of their kosher certifier's qualifications for determining that food is kosher. The Department of Markets and Agriculture then makes the information available to the public through its website so that consumers can make informed decisions regarding kosher food purchases.
Although the full language of § 201-c is provided below, plaintiffs do not challenge §§ 201-c(3) & (4). The two unchallenged sections concern retail vendors; they require vendors to file the identity of their kosher certifier with the Department of Agriculture and Markets, post a kosher certification form in the retail establishment, and keep a logbook of inspections by the kosher certifier.
Section Two of the 2004 legislation reads as follows:
"Legislative findings and intent. The legislature finds that a significant number of consumers within the state seek to purchase food products that are kosher, and that many of those consumers do so for reasons unrelated to religious observance. The legislature further finds that it is essential that consumers be provided clear and accurate information about the food they are purchasing, and that this goal is furthered by requiring vendors of food and food products represented as kosher to make available to consumers the basis for that representation."
L. 2004, c. 151, § 2.
Section 201-a, titled "Kosher food and food products; packaging," provides that:
1. All food and food products packaged in any container and sold or offered for sale as "kosher" or "kosher for passover" shall have a "kosher" or "kosher for passover" label affixed by the manufacturer or packer at its premises. No person other than such manufacturer or packer shall affix such labels.
2. All food and food products that are not packaged in a container and are sold or offered for sale as "kosher" or "kosher for passover" shall have a "kosher" or "kosher for passover" label affixed thereto. No person other than such manufacturer or packer shall affix such labels.
3. Any food or food product in package form that is certified or labeled as "kosher" or "kosher for passover" shall not be sold or offered for sale by the producer or distributor of such food or food product until the producer or the distributor shall have registered with the department the name, current address and telephone number of the person certifying the food as kosher.
4. Any food or food product in package form that is marked "rabbinical supervision" or that is marked with a "k" "km", "kos", "kp" or any other generic marking used to convey that such food or food product is kosher, except a registered trademark not used to represent such food or food product as kosher, shall not be sold or offered for sale by the producer or distributor of such food or food *410 product until such producer or distributor shall have registered with the department the name, current address and telephone number of the person certifying the food or food product as kosher.
5. As used in this section, the term "food or food product in package form" means a food or food product not intended for consumption at the point of manufacture that is put up or packaged in any manner in advance of sale in units suitable for retail sale.
6. Any advertisement for food or food products representing that such food or food products are kosher shall identify the name of the person, or entity, certifying such food or food products as kosher.
7. Where a producer or distributor is required to register a certifying person pursuant to the provisions of this section, such producer or distributor shall immediately notify the department of any change in the registration information.
8. No liability for misrepresentation shall be incurred by any distributor if it has received written representation from a manufacturer of food and food products that its certifying information has been filed with the commissioner; provided, however, that if such distributor has received notice from the commissioner that the information filed by such manufacturer is no longer valid, the distributor will be liable for the sale of misrepresented products unless the distributor files valid certifying information.
Section 201-b, titled "Retail sale of kosher food or food products," provides that:
1. Any person who sells or offers for sale in the same place of business meat, meat preparations, meat byproducts, poultry or other food or food products that are represented as both kosher and non-kosher shall indicate in window signs, in block letters at least four inches in height, "kosher and non-kosher meat sold here" or "kosher and non-kosher food sold here."
2. All fresh meat, meat preparations, meat by-products and poultry sold or offered for sale at retail as kosher shall be marked on the label when packaged, or by a sign when not packaged, with the words "soaked and salted" or "not soaked and salted," as the case may be. Such words, when marked on a label or a sign, shall be in letters at least as large as the letters of the words on the label or sign designating such meat, meat preparations, meat byproducts and poultry as kosher.
3. Any person who sells or offers for sale as kosher, at wholesale or retail, any meat, meat preparations, meat by-products or poultry shall maintain a record of each purchase from a manufacturer or packer, which shall include, but not be limited to, a bill of sale, and retain all records with respect to the origin of such meat, meat preparations, meat byproducts or poultry for a period of two years after the sale to which the records relate, and shall make such records available to the department upon request. Meat, meat preparations, meat by-products and poultry packed off-premises and labeled as kosher by the packer thereof shall be exempt from the record keeping requirements of this subdivision, provided that the package contains the name and address of the manufacturer or packer and the name of *411 the person certifying such food or food products as kosher.
Section 201-c which is captioned "Persons certifying as kosher; filing with department" provides that:
1. Any person who certifies any non-prepackaged meat, meat preparations, meat by-products or poultry as kosher or kosher for Passover, and any person who certifies any non-prepackaged food or food products as kosher or kosher for Passover shall file with the department, in accordance with regulations set by the commissioner, a statement of such person's qualifications for providing such certification.
2. No person shall within this state manufacture, compound, brew, distill, produce, process, pack, sell or offer for sale any non-prepackaged meat, meat preparations, meat byproducts, poultry or food or food products that are represented or branded as kosher unless such person has, in accordance with regulations set by the commissioner, filed with the department the name, address, and telephone number of the person certifying such food or food product as kosher.
3. [Not challenged] Any food establishment or caterer that sells or offers for sale food or food products prepared on the premises or under its control that are represented as kosher, shall file with the department the name, address, and telephone number of the person certifying the food or food products as kosher. Food establishments and caterers selling or offering for sale food or food products prepared on the premises or under their control that are represented as kosher shall post a "kosher certification form" in a location readily visible to the consumer, and shall also provide a copy of such form to the department. The kosher certification form shall contain the information and be in the form set forth below, in not less than twelve point type: [model "kosher certification form" set out in statue].
4. [Not challenged] Any food establishment or caterer that sells or offers for sale food or food products prepared on the premises or under their control that are represented as kosher shall maintain a permanently bound logbook that shall include for each inspection visit of the person certifying their food or food products as kosher, the signature and printed name of the person performing the inspection and the date and time of arrival at the establishment. The logbook shall be maintained for a period of not less than two years after the final entry, and shall be made available to the department upon request.
5. The department is authorized to inspect all food establishments and caterers selling or offering for sale food or food products represented as kosher to ensure compliance with [§§ 201-a-c], and the accuracy of any information supplied in accordance with such sections. The commissioner is authorized to promulgate rules and regulations as are necessary to further implement the provisions of [§§ 201-a-c]. The department shall develop and maintain a website that makes available to consumers copies of all forms and certification information that are required by this section.
6. Failure to comply with the requirements of [§§ 201-a-c] or the failure to conform sales practices to the information *412 provided in the kosher certification form pursuant to this section shall be punishable by a fine of not more than one thousand dollars for a first violation; not more than five thousand dollars for a second violation; and not more than ten thousand dollars for a third violation and each subsequent violation thereafter.
Section 201-d is a notice provision regarding the issuance of violations of §§ 201-a-c. It provides that violators will be notified in writing and that information including the name and business address of the alleged violator, the date of inspection, the violation that is alleged to have occurred, and the amount of the assessed penalty, will be made available to the public.

II. Establishment Clause Challenge
With regard to the Establishment Clause, plaintiffs make a sweeping facial challenge to the entire Act (excepting §§ 201-c(3) & (4)), arguing that there is no set of circumstances under which the Act would be valid. They claim that, by requiring labeling on all food sold as kosher, the challenged statutes are as discriminatory against non-Orthodox Jews and kosher food purveyors as were the previously invalidated kosher laws.[2]
The three-pronged test of Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), is used to evaluate facial challenges under the Establishment Clause. Skoros v. City of New York, 437 F.3d 1, 11 (2d Cir.2006); Commack I, 294 F.3d at 425. Lemon requires that a challenged law (1) have a secular purpose, (2) have a primary effect that neither advances nor inhibits religion, and (3) not foster excessive state entanglement with religion. Lemon, 403 U.S. at 612-13, 91 S.Ct. 2125. The Act meets each prong of the Lemon test.
The Act requires that manufacturers of prepackaged foods representing their products to be kosher file basic information with the State regarding the background and qualifications of their kosher certifier. The State maintains an online registry with this information so consumers can judge for themselves whether or not they are comfortable with the authority of the kosher certifier, It also requires that any re-packaged food (such as cuts of meat at the butcher counter) or food prepared by the retail vendor, be labeled as kosher by the vendor and that the vendor's kosher certifier also provide the same basic information to the State. The purpose of the inspection provision is to ensure that manufacturers and vendors have complied with the labeling, posting, registration, certification, and record-keeping requirements. The inspectors are authorized only to conduct inspections to ensure compliance with §§ 201-a-c of the Act. N.Y. Ag. & Mkts. Law § 201-c(5).
In evaluating whether there is a secular purpose to the statute, the court must look to "whether government's actual purpose is to endorse or disapprove of religion," Lynch v. Donnelly, 465 U.S. 668, 690, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), and how the government's purpose is perceived by "an `objective observer,' one who takes account of the traditional external *413 signs that show up in the text, legislative history, and implementation of the statute," Skoros, 437 F.3d at 22 (quoting McCreary County v. ACLU, 545 U.S. 844, 861, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005)). The asserted secular purpose of the challenged statutes is to protect consumers of food represented to be kosher from fraud.
In Commack I, the Second Circuit found that there is a "valid secular interest in protecting from fraud all those who choose to consume kosher food products." Commack I, 294 F.3d at 431. The text and organization of the Act point to the State's secular purpose of preventing marketing fraud. Unlike the previously invalidated kosher laws, there is no definition of kosher, and there is no mechanism in the Act to evaluate whether a food product is kosher by any standard.
The history of the Act is one in which a previous version of the law was found invalid on advancement and entanglement grounds. The legislature corrected the flaws of the previous legislation. Further, the "legislative findings and intent" indicate that: 1) "a significant number of consumers within the state seek to purchase food products that are kosher;" 2) "many of those consumers do so for reasons unrelated to religious observance;" 3) "it is essential that consumers be provided clear and accurate information about the food they are purchasing;" and 4) "this goal is furthered by requiring vendors of food and food products represented as kosher to make available to consumers the basis for that representation." N.Y. Ag. & Mkts. L. 2004, c. 151 § 2. In short, the legislature wishes to protect consumers from fraud.
Plaintiffs argue that the State is somehow interfering with Jewish religious law by passing a law premised on the notion that both Jews and non-Jews are consumers of kosher food products; "By adopting the Act, Defendants have engaged in inherently unconstitutional conduct; Defendants are enacting ecclesiastic law by proclaiming that the concept and practice of kashrut is not a matter of religious law but, rather, relegated simply to secular commerce." Plaintiffs' Brief p, 41. However, the issue is not whether plaintiffs agree with the State's purpose, but only whether that purpose is a secular one. The State cannot define what is and is not kosher because that is a matter of religious law. But the State is entitled to protect all purchasers of food represented to be kosher, whatever their religion, from fraud.
In sum, I cannot find that an objective observer would have cause to doubt the State's articulated secular purpose. Since the State's action is premised on the need to protect consumers from fraud, the first prong of Lemon is satisfied.
The second prong of Lemon, the "endorsement test," provides that the "principal or primary effect" of the challenged government action "must neither advance nor inhibit religion." Skoros, 437 F.3d at 29 (quoting Commack I, 294 F.3d at 430). In Skoros, the Second Circuit explained that this endorsement test "seeks to ensure that government does not make a person's religious beliefs relevant to his or her standing in the political community, thereby sending a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." Skoros, 437 F.3d at 30 (internal quotation marks and citations omitted), In contrast to the previously challenged statutes, which constituted an advancement of Orthodox Judaism because they defined "kosher" as meeting "orthodox Hebrew religious requirements," the current version of the Act is *414 purely a labeling and disclosure law. There is no sound basis for concluding that the labeling requirement favors one group over another or that the purpose of the Act is to further Orthodox requirements. Therefore, the Act does not endorse any particular religious viewpoint and satisfies the second prong of Lemon.
For the same reasons that it passes the endorsement test, the Act does not create an impermissible entanglement with religion under the third prong of Lemon. Lemon, 403 U.S. at 613, 91 S.Ct. 2105; Skoros, 437 F.3d at 35. With regard to entanglement, plaintiffs allege that the establishment and maintenance of the registry is pretextual. They claim that the true motivation for the establishment of the registry is not to protect consumers from fraud but to protect the interests of private organizations that certify food as kosher. Plaintiffs argue that, because there is entanglement between the Orthodox religious community and the State's political elite, certain powerful members of the Orthodox community were able to persuade the State that the creation of a public registry was desirable. Plaintiffs misapprehend the meaning of entanglement as contemplated by the Lemon test. The inquiry is whether the government is being "charged with enforcing a set of religious laws," see Commack, 106 F.Supp.2d at 457, is delegating governmental duties to a religious institution, see Board of Ed. of Kiryas Joel Village School District v. Grumet, 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994), or is making an inquiry into the religious content of the items sold. See Jimmy Swaggart Ministries v. Board of Equalization of California, 493 U.S. 378, 396, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990). No such entanglements are present here.[3]
Plaintiffs allege that, when Commack Kosher was inspected by the State, the inspector "advised the plaintiffs that it was his function to inspect the purveyor's establishment to verify that all products being sold bore acceptable `labels' and that the food being offered for sale was otherwise acceptably kosher." Amended Complaint at ¶ 140. Noting the plain meaning of the Act, the State disavows that an inspector has the authority to verify whether foods are "acceptably kosher" and is unequivocal that, if an inspector said something to that effect, it was an error on his part. As plaintiffs themselves allege, the State's inspectors are not required to be rabbis nor to be learned in Jewish religious law. This supports the State's reading of the statute as to the limited nature of the inspection. Moreover, no violations were issued to Commack Kosher as a result of the inspection. That an inspector may be mistaken as to the meaning of a newly enacted statute does not render the statute unconstitutional.
Because the State does not determine if a product is kosher under religious law, *415 whether Orthodox or not, it does not create excessive state entanglement with religion. In sum, there is no danger here that the State will become involved in deciding what is or is not kosher or other questions of Jewish religious law.

III. Free Exercise Challenges
Plaintiffs make two free exercise arguments. They argue (A) that the Act constitutes an impermissible regulation of plaintiffs' religious practices and (B) that it is not the least restrictive means of preventing fraud.

A. Impermissible Regulation of Religious Practices
Plaintiffs argue that the practice of keeping kosher is "a Jewish religious practice with respect:o which no secular law may have bearing." Plaintiffs' Brief p. 16. As they note, the Free Exercise Clause protects "a religious institution's right to decide matters of faith, doctrine, and church governance." Rweyemamu v. Cote, 520 F.3d 198, 205 (2d Cir.2008). They argue that, whether or not a product needs to be produced under rabbinical supervision to be "acceptably kosher" is exclusively a Jewish religious issue and, therefore, should be shielded from governmental regulation.
Plaintiffs' reliance on Rweyemamu is misplaced. Their argument is premised on a fundamental misunderstanding of the Act. Under the Act, there is no determination by the State with regard to whether a product is kosher or whether a product must be produced under rabbinical supervision to be kosher. The Act simply provides that, if a product is represented as kosher and offered for sale as kosher to the public, the person who determined that the product is kosher must register with the State and supply his or her credentials so that individual members of the public can determine for themselves whether to rely on that certifier's determination. Requiring that purveyors of food represented to be kosher provide the public with such information does not amount to regulation of religious practices.

B. Least Restrictive Means
Laws that substantially burden the exercise of sincerely held religious beliefs are subject to strict scrutiny under the Free Exercise Clause of the First Amendment. Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993); see also Sherbert v. Verner, 374 U.S. 398, 402-03, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). "To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." Lukumi Babalu Aye, 508 U.S. at 546, 113 S.Ct. 2217 (internal citations and quotation marks omitted). Where the government seeks to enforce a law that is neutral and of general applicability, however, then it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices. See id. at 531, 113 S.Ct. 2217; Employment Div., Dep't of Human Res. of Oreg. v. Smith, 494 U.S. 872, 878-79, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570 (2d Cir.2002), Enforcement of a statute "substantially burdens" religious conduct if it forces the religious adherent to choose between following the law or following the precepts of his or her religion. Sherbert, 374 U.S. at 403-04, 83 S.Ct. 1790; see Jimmy Swaggart Ministries, 493 U.S. at 389-390, 110 S.Ct. 688 (upholding the collection of a generally applicable sales and use tax regardless of the motivation for the sale or purchase of religious items on the ground that it was *416 "not a tax on the right to disseminate religious information, ideas, or beliefs per se; rather, it is a tax on the privilege of making retail sales of tangible personal property . . .").
Plaintiffs cite Church of Lukumi Babalu Aye, 508 U.S. at 538, 113 S.Ct. 2217, to support the proposition that the Act is not the least restrictive means of preventing marketing fraud of food products represented to be kosher. Plaintiffs rely on the Supreme Court's conclusion in that case that ordinances forbidding the ritual slaughter of animals proscribed more religious conduct than was necessary to achieve their stated ends. "It is not unreasonable to infer, at least when there are no persuasive indications to the contrary, that a law which visits gratuitous restrictions on religious conduct seeks not to effectuate the stated governmental interests, but to suppress the conduct because of its religious motivation," Lukumi Babalu Aye, 508 U.S. at 538, 113 S.Ct. 2217 (internal citations and quotation marks omitted). No such purpose to suppress religious conduct is present here.
As has been previously noted in Commack I, in the context of an Establishment Clause challenge, the Second Circuit found that the State has a "valid interest in preventing fraud in the sale of any foods, including kosher foods" and that "this interest in protecting against fraud in the kosher food market extends to the general public." Commack I, 294 F.3d at 431. Significantly, the Second Circuit also observed that, "the State `can prevent fraud in the sale of kosher food in a less restrictive and neutral manner by simply requiring that any vendor engaged in the sale of kosher food state the basis on which the food is labeled kosher.'" Id. (quoting Barghout v. Bureau of Kosher Meat and Food Control, 66 F.3d 1337, 1346 n. 15 (4th Cir.1995)); accord Ran.-Dav's County Kosher, Inc. v. New Jersey, 129 N.J. 141, 608 A.2d 1353 (1992). The challenged statutory scheme is precisely such a labeling and disclosure requirement that, through its certification, registry, and website provisions, provides public disclosure of "the basis on which food is labeled kosher." Id.
The challenged scheme does not restrict any religious practice; it does not define what is and is not kosher; and it does not, contrary to plaintiffs' argument, require the use of any particular symbol or mark to indicate that food is kosher. See N.Y. Ag. & Mkts. Law § 201-a(4). The law is generally applicable to all manufacturers and vendors of kosher foods, regardless of religious affiliation. Further, the plaintiffs do not identify any way in which they or any retail vendor would be forced to choose between following the Act and engaging in religious practices. Plaintiffs argue that there is no religious requirement that kosher food bear a label. This argument misses the point. The challenged statutes are not enforcing religious law. Nor do the challenged statutes, as plaintiffs argue, require that vendors use only labels sanctioned by Orthodox certifiers. Again, plaintiffs misread the challenged statutes. Nothing in the Act prevents plaintiffs from adhering to their own religious beliefs and practices.
There is a burden on manufacturers and retail vendors, whether Jewish or non-Jewish, who represent food to be kosher, to label the food they prepare and package as kosher, and to disclose basic information regarding the qualifications of their kosher certifier. That burden however, is an incidental one. Therefore, the Act does not require strict scrutiny but requires only that the State have a rational basis for its enforcement. Fifth Ave. Presbyterian Church, 293 F.3d at 574.
*417 Plaintiffs argue that the State can prevent fraud through the use of a general anti-fraud statute and that the requirement that retail merchants post a kosher certification form and keep a log of visits from their kosher certifier is all that is required to prevent fraud in the kosher food market. However, a general antifraud statute cannot be used because the State would be called upon to make a determination regarding what is kosher and what is not kosher; and the State has reasonably chosen to require more than uninspected certification forms and logs. The Act demonstrates recognition by the State that, because of the Establishment Clause, the State cannot make a determination as to whether food is or is not kosher according to specific religious dietary laws. The Act is a modest effort to avoid fraud in the marketing of food represented to be kosher in a manner that the Second Circuit has already recognized to be acceptable. Commack I, 294 F.3d at 431-32.

IV. Vagueness Challenge
Plaintiffs argue that the challenged statutes are unconstitutionally vague. "A statute can be impermissibly vague for either of two independent reasons, First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000); Farrell v. Burke, 449 F.3d 470, 485 (2d Cir.2006). Thus, all vagueness challenges, whether facial or as-applied, require the court to answer two separate questions: whether the statute gives adequate notice, and whether it creates a threat of arbitrary enforcement. Farrell, 449 F.3d at 485.
Plaintiffs' vagueness argument is unpersuasive. Although plaintiffs argue that the language of the Act provides no guidance for a person of normal intelligence to be able to conform to the law, they present no example of a vendor's dispute or confusion, or of arbitrary or discriminatory enforcement. Plaintiffs allege no violations as a result of the inspection of Commack Kosher and no failure to conform to the Act based on a misunderstanding of its meaning. Speculation about possible vagueness in hypothetical situations not before the court will not support a facial attack on a statute when it is valid "in the vast majority of its intended applications," Hill, 530 U.S. at 733, 120 S.Ct. 2480.

Conclusion
For the reasons stated above, defendants' motion to dismiss is granted on all claims. The Clerk of Court is directed to enter judgment for defendants and close the case.
SO ORDERED.
NOTES
[1] At oral argument, plaintiffs withdrew their challenge under General Business Law § 349, as well as their claims against the State of New York, their claims for money damages against the State, and their claims under the New York State Constitution.
[2] Plaintiffs argue that this constitutional offense is compounded by the inspection mechanism, on the ground that it is a violation of the purveyor's constitutional rights for an inspector to do anything more than verify that the purveyor has complied with the sections to which plaintiffs have not objected, i.e., that the purveyor has posted a certification form under § 201-c(3) and that a logbook of inspections by the kosher certifier has been maintained under § 201-c(4).
[3] As often happens in Lemon analysis, there are considerations that apply to multiple prongs. The entanglement argument addressed in the text could be viewed as a purpose argument. However, the Supreme Court has found that, absent indicia of an improper government purpose obvious to the objective observer, a possible secret motivation is not a sufficient basis to find a statute unconstitutional. In McCreary the Supreme Court noted that a review of previous case law shows that "the government's action was held unconstitutional only because openly available data supported a commonsense conclusion that a religious objective permeated the government's action," McCreary County, 545 U.S. at 861, 125 S.Ct. 2722. The Court went on to note that, "[i]f someone in the government hides religious motive so well that the objective observer, acquainted with the text, legislative history, and implementation of the statute, cannot see it, then without something more the government does not make a divisive announcement that in itself amounts to taking religious sides." Id. at 863, 125 S.Ct. 2722.